Ballard v. Ameren Illinois Company  We'll move now to Appeal 25-1562. Ballard v. Ameren Illinois Company We'll begin with oral argument from the appellant, and Mr. Lastoon will recognize you. Good morning, Your Honors, and may it please the Court. I would like to address today two errors made by the District Court. First, the District Court erred in finding that Ms. Ballard's Complainant Information Sheet, or CIS, was insufficient for the purposes of the 300-day filing period of the Federal Americans with Disabilities Act. Secondly, if this Court does not agree with our position on Ms. Ballard's CIS, the District Court nonetheless erred in failing to equitably toll the charge filing deadline based on the misleading Illinois Department of Human Rights information given to Ms. Ballard that lulled her into inaction and caused her to fail to file a perfected charge. With regards to the adequacy of the CIS for the purposes of the filing period, I would like to focus on two particular points. First, this Court should reconsider its decision in Carlson v. Christian Brothers Services and its incorrect application of Supreme Court precedent Federal Express v. Holowecki. Usually when we do that, when we reconsider our own precedent, we do so based upon intervening Supreme Court law. Holowecki had different facts in the sense that an affidavit was attached to the document there. Why is Holowecki or other case law, say from the Fifth or Sixth Circuit, sufficient basis for us to readdress Carlson? Yes, Your Honor. First, the affidavit in Holowecki mostly concerned just additional claims of discrimination or alleged claims of discrimination. Ms. Ballard's CIS here contains the same information without any additional filings. Secondly, as the decision in Holowecki itself, as well as decisions from the First, Third, and Fifth Circuits show, Carlson was incorrect in finding that Ms. Ballard's CIS and comparable CISs did not request agency remedial action. Holowecki requires only that a pre-charge filing to account for the purposes of the 300-day filing request that the agency activate its machinery and remedial processes. Ms. Ballard's CIS clearly did so in repeatedly requesting an agency investigation. Carlson said incorrectly that the CIS did not request a remedy and did not authorize the agency to notify an employer, both of which the CIS explicitly does. Ms. Ballard's CIS talks about an investigation or uses the word investigate nine different times throughout, clearly indicating that that is the remedy she requests from the agency. Additionally, this is the only remedy that agencies like the IDHR or EOC is equipped to give. Given for them to do any more specific remedies such as damages, they would have to file litigation and go to the courts. The form uses a series of if-then propositions. Yes, Your Honor. And an if-then proposition would mean one must have the basis before one moves to the second step. For example, just above where it says this is not a charge, if IDHR accepts your claim of discrimination brackets, then information will be typed on an official charge form, then the charge form must be signed, et cetera. Doesn't the if-then nature of the CIS make this less than a charge? In a sense, Your Honor, this is not a charge in the sense that it is not a perfected, finalized charge. However, Holowecki made very clear that sufficient pre-charge filings, even if they are not themselves fully perfected charges, are sufficient for the purposes of the 300-day filing deadline if they request remedial action and can be reasonably read to do so. Although the pre-charge filing in Holowecki specifically talked about only potential charges and referred to itself as a pre-charge filing throughout. Nonetheless, the Supreme Court found it sufficient based on the inclusion of language that sufficiently requested a remedy. This valid CIS aims to do the same in including language specifically taken from the EEOC's post-Holowecki intake questionnaire, which is included towards the end of the CIS with the language, I authorize the EEOC to look into the discrimination alleged. This language was found by both the Third and Fifth Circuits in Hildebrand versus Allegheny County and EEOC versus Vantage Energy to be sufficient to satisfy Holowecki's remedial requirement because it authorizes the agency to investigate the charge, which is a sufficient remedy under Holowecki. The inclusion of that language, as well as the repeated references to the filer as a complainant and the filing as a claim and complaint, make clear that the document requests sufficient remedy. The First Circuit in Alley versus Mohegan Council found that referring to the filer as complainant, as the complainant information sheet does, was a key part of satisfying Holowecki's standard for the 300-day charge filing period. Counsel, I want to ask you some questions about the record and equitable tolling specifically. Does the current record at this procedural stage, does it contain a comprehensive account of all the communications between Ms. Ballard and the IDHR? No, it does not, Your Honor. The record is missing a number of Ms. Ballard's communications to the IDHR, as well as potentially missing communications from the IDHR we are unaware of. For instance, on the equitable tolling front, the December 21st email is the most relevant one, and we have no record of any communications from Ms. Ballard to the IDHR that prompted this question. Additionally, the IDHR presents throughout the filing period the CIS as sufficient to file a charge. When you go to the IDHR's website and you go to their file a charge page and you press on the large file a charge of discrimination button, you are taken directly to the CIS with no disclaimer other than the language included in the CIS itself that it is insufficient for the purposes of the 300-day filing period. This position has been supported by the EEOC, who filed an amicus brief in Carlson back in 2016, indicating that they believe the CIS should be sufficient for the purposes of the 300-day charge filing period. Do we know if the EEOC, based upon changes in administration, might have changed that position since 2016? We have no evidence in whether or not the EEOC has changed their position one way or another, Your Honor. Additionally, Holowecki requires that a pre-charge filing, in order to be sufficient for the purposes of the 300-day deadline, also has to satisfy the standard charge requirement that it specify the claim of discrimination alleged. Ms. Ballard's CIS clearly does so in describing her disability, the alleged employment actions taken against her, and the action of the employer throughout, which sufficiently satisfies the requirement to allege her claim of discrimination and the adverse employment action taken. Additionally, Carlson was incorrect in requiring a filer to specify a particular kind of remedy or relief that they desired, such as requiring that they specify back pay or restitution or other forms of damages. Carlson cites to Holowecki for this proposition. However, all Holowecki requires is that a filer request the agency activate its remedial processes, not that they specify any particular kind of result that they would want. Additionally, the agencies like the IDHR and EEOC are only statutorily equipped to investigate a charge of discrimination. They have no other remedial power beyond filing a lawsuit if they choose to do so. Thus, the investigation that Ms. Ballard's CIS asks for is the only and the sufficient remedy under Holowecki. If we look to the EEOC's official charge form, form 5, we see that there is no space and no option for a filer to specify any kind of particular remedy, other than alleging their claims of discrimination. Thus, if we follow the logic of Carlson to strictly, nearly every charge filed would be insufficient for the purposes of the 300-day deadline. If the district court, or if this court does not agree with our argument that the CIS was sufficient for the purposes of the 300-day charge filing period, the district court nonetheless erred in failing to equitably toll the charge filing period. Based on the misleading IDHR information given to Ms. Ballard two days before the end of the charge filing period, that lulled her into an action and caused her to fail to file a protected charge. This court's precedent in early versus banker's life and casualty company is exactly on point here. In early, the plaintiff was discharged by his employer and went to the EEOC to fill out an intake questionnaire. There, the EEOC informed him that after filling out this intake questionnaire, he had done everything required of him administratively and that there was nothing further he needed to do. He took this to mean that he had filed a perfected charge and thus failed to do so within the time period, filing a charge nearly a year after the deadline instead. Nonetheless, this court equitably tolled the charge filing deadline based on the misleading agency information. Here, two days before the end of the charge filing period, and with time remaining to go to the EEOC and file a perfected charge, the IDHR informed Ms. Ballard that no further action was required of her at this time because both the EEOC and the IDHR had received her information. Additionally, they noted that if any further information or action was required of her, it would come based on communications from the IDHR if necessary. She naturally took this to mean that she had satisfied her statutory requirements and had filed a sufficient filing for the purposes of the 300-day period and thus did not do so within the remaining portion of the filing period. Amron argues that because Ms. Ballard waited until two days before the end of the filing period, she was not diligent in taking such action. However, as Your Honor addressed earlier, the record does not actually show that Ms. Ballard waited until two days before the filing period, only that the IDHR responded to her then. Additionally, Ms. Ballard filed her CIS 122 days before the end of the filing period, well within the statutory requirements. By reaching out to the IDHR beyond just filing her CIS, she vigorously pursued all of her rights with great diligence. Nonetheless, she was misled by the agency, which never corrected its error or specified that she had failed to file a perfected charge. Did Ms. Ballard know that she could file a charge directly with the EEOC? I am not sure, Your Honor, but either way, she would not have felt any need to given the IDHR email explicitly indicated that her information had been filed with both the IDHR and the EEOC, so she could reasonably read that to mean that she had no additional requirement to go to the EEOC. Additionally, the IDHR and the EEOC have a work-sharing agreement that they've been working under since the time of Ms. Ballard's filing, which means that any document filed with the IDHR will be cross-filed with the EEOC without any additional involvement by the filer, a fact made very clear in the CIS through its repeated references to the EEOC throughout. Would you like to reserve the remainder of your time for rebuttal? Yes, and if there are any further questions, I would like to reserve the remainder of my time for rebuttal. Thank you, Mr. Lastuen. We'll now move Ms. Rhodes to you for oral argument on behalf of the appellee. Good morning, Your Honors, and may it please the Court. I think in this argument, what I'd really kind of like to point to the Court to is the actual timing, because I believe that the timing of Ms. Ballard's actions that we have of record is important for this Court's consideration. First of all, we have that by way of background, the appellant was an Energy Efficiency Advisor who worked for Ameren Illinois Company. Her employment was terminated on February 26, 2018. The appellant submitted her Complainant Information Sheet, or CIS, to the Illinois Department of Human Rights on August 23, 2018. This was precisely 178 days after her employment was terminated, and you have to remember that at this time, the filing time for filing with the Illinois Department of Human Rights was 180 days. Appellant CIS was acknowledged by the IDHR and provided a reference number, and I think it's important to know that this is simply a reference number and that that is separate from the IDHR's and EEOC's charge number, that they eventually draft. That happened on August 24, 2018. At day 219, following her termination of employment, there is a December 21, 2018 email which says, your information, and it goes back to that control sheet number, is recognized as having been filed on August 24, 2018 by the EEOC, in addition to this department. It will, noting that if-then statement that Judge Brennan, you mentioned earlier, it has that if-then statement, it says, it will be cross-filed with the EEOC by IDHR, so no further action is required at this time. Then it goes on and says, you will receive either a drafted charge against Ameren, Illinois, to review or request for additional information, if necessary, and please return any information or documentation to that office unless instructed otherwise. But the chronology doesn't stop there, and my opponent doesn't raise these other correspondence that happened on January 30, 2019, and January 31, 2019. And I think that the email and the communication from Ms. Ballard on January 30, 2019 is pretty telling, because what she asked is, she asked the Illinois Department of Human Rights, she asked them for the EEOC number, so she knew that there was something that needed to happen, that there had to be an EEOC number. Here's what the department then turns around and responds, and says that there is not a more specific EEOC number, so she knew at that time that there was not a more specific EEOC number, until the IDHR, quote, determines that a formal charge of discrimination is able to be drafted. And that's at Docket 15, Exhibit C, for your honors references, and that EEOC and IDH charge numbers would be generated if a charge is able to be drafted regarding the allegations. So she knows as of January 31, 2019, that there had not been a formal charge that was filed with the EEOC. Ms. Rhodes, I mean, this is not your client's fault, but I think it's hard to read these communications from the IDHR and be anything but quite confused. I mean, you just read a few of them to us, and I mean, the one on December 2018 sort of says two things. It says it has been filed with the EEOC, and it also will be filed with the EEOC, and it says do nothing more at this time. And then in November and December of 2019, the IDHR says to Ballard that her charge was filed on August 24, 2018. So it's hard for me to read all of these communications, which again did not come from your client, and come away with any clarity, especially if I was a layperson, a non-lawyer, about whether a charge had been filed, needed to be filed, and it's certainly I don't see anywhere where the IDHR tells Ms. Ballard, you haven't filed a charge and you need to do so with the EEOC. I think that there are a couple of comments. First of all, that December 23rd email that we've all been talking about, that happened to be of day 298, so she was right there at the cusp of the EEOC charge. And we don't disagree that some of that wording in that communication is confusing. I can understand that from a layperson's perspective. What I can't match up is why then on that January 30th date does she actually ask for an EEOC number? Well, let me ask you this. There's something tripping that. Does the record at this point, my understanding is the record does not contain a comprehensive account of all of these communications. For example, we have no idea what precipitated that December 21st, 2018 status update from the IDHR. And I guess that causes me, I mean, we have held that a ruling on equitable tolling is usually premature at the motion to dismiss stage for this exact reason, because it is a sort of very record-specific question that requires detailed analysis of exactly who knew what when. I think to go back to your honors question, and trust me, we've obviously looked at this issue. We take these things very seriously in filing a motion to dismiss. But I think that one of the things we ask this court to go back and do, and we referenced in our brief, is to go back to the 2021 case that she actually filed. So back in 2021, Ms. Ballard filed basically the same identical case against Amron, Illinois Company. And we went through this process of filing a motion to dismiss. The court did, as you suggested, turned around and said, hey, we probably need to develop a record. Amron said, fine, we'll engage in discovery. What happened is we never got the documents from Ms. Ballard. And we ended up filing, again, a request to dismiss her underlying case because she didn't comply with the discovery process. So we knew what happened during this period of time. So what she then turned around and did is she filed a motion for voluntary dismissal. And the court granted that, although Amron did object to it. But she had that opportunity in that earlier case to ferret out a record. And that wasn't done. And are we going to go through that again? And so Amron decided, let's go ahead and file this motion to dismiss. We don't think that the court, based upon the record in front of it, and remember, as you pointed out, it's documents that she should have had primarily in her control. My client clearly could not have had any of that information under control. But yet we're the ones sitting here defending a lawsuit that was done back in 2021. We're now in 2026. And we're talking about the issue of equitable tolling. And I think you can't look at it without also looking at the actions of Ms. Ballard. When you look at those equitable tolling issues. And I think it's fair to go back and look at what happened in the earlier cases. And where Amron is at and why we're making this plea to this court to affirm the lower court's decision. Equitable tolling questions, by their nature, are fact intensive. District court has not ruled on that. I'm not sure why. What's the downside of a remand to the district court to get, as an initial matter, a ruling on the equitable stopple, and then we can review it under the appropriate standard of review? I think, Your Honor, we've run into the same difficulty that we ran into in the 2021 case. And that's the ability to get the complete record. We just heard from counsel going, there's nothing in there that prompts and knows why that communication happened in December. You know, it would take a lot of discovery. It would take a lot of actions. And also, as I said, I think that why I would urge this court not to do that is, Ms. Ballard had largely control of this record. It wasn't Amron, Illinois Company. It was Ms. Ballard. And we're talking about equitable tolling. And as this court has held many times, equitable tolling is exactly that. It's an equitable remedy. And it's to be used very sparingly. So for those reasons, we ask that the court not. We ask that the court find that there was sufficient facts to go forward. Was the information before the district court, the answer to that is yes. Did she file a motion for reconsideration? The answer to that is yes. So there was an opportunity for her to present a lot of information to the court. She could have also. She was represented by counsel in the first one. They could have specifically asked at that time that the court engage in some type of evidentiary hearing or limited discovery or something of that nature, if that's what their interest was. And she was represented by counsel in the first, in the 20, the most recent case. So I think that there were opportunities. I kind of want to switch now to the arguments that were had with respect to Carlson. And a couple of things that I think that's important to note from this court. One of the things that my very worthy opponent tries to point out is what they would argue is sort of like a split within the circuits. And we would say that there's not a split in the circuit, especially because they rely on that case of EEOC versus Vantage Services, Inc. And I'm going to quote, and they also rely on and made a statement about Hildebrand versus Allegheny County, which is a third circuit 2014 case. And I asked this court to specifically look at footnote number nine in that case. Look at the footnote number nine, or I'm sorry. Yeah. Footnote number nine on page 757. And here's what the court writes. Carlson interpreted the sufficiency of a CIS filed with the state agency, not a charge filed with the EEOC. And I think that that distinction is important because a lot of the cases that they rely on is the EEOC form. The only cases we have that looks at the Illinois form is both Carlson, which the form was somewhat amended and changed after Carlson actually, and I'll get to that here in a minute. But it also, we also addressed it in Amin Ra case, which is an unpublished seventh circuit decision that happened in 2020. But here's what else that the court basically said in that EEOC versus Vantage. More importantly, the CIS, and talking about going back to Carlson and the Illinois form, more importantly, the CIS did not request relief and thus could not be considered a charge under Holowiki. Specifically said that this form is different. We're distinguishing Carlson. Carlson wasn't inappropriate. Carlson wasn't cited wrongly. Carlson, it's a different form. It's a different document. I also asked this court to basically look at the document itself. As was pointed out during my opponent's argument, there's a lot of if-then statements. And that's exactly what Amrin has argued, is that there are a lot of if-then statements in that document. But probably the most telling issue is after Carlson, the addition up at the very top in bold caps and underline. This is not a charge. So it was clearly stated in that document, this is not a charge. Also, the other piece of this, too, is a statement has to be notarized in order for it to be a formal charge. There is nothing in that document before this court or anything that Ms. Ballard can show to show that there was actually a charge, that there was actually a notarized statement. For all of these reasons, we don't believe that you can find or ask you to look at or reconsider the Carlson case. I think that also to answer another question that was asked to my opponent about her knowledge of the EEOC, if you actually look at that charge of discrimination that she filed with the IDHR, it references an earlier EEOC complaint that she had actually filed directly with the EEOC. The record also shows that she intentionally withdrew the charge by the EEOC. So she was aware of the EEOC process. Clearly, we're looking at the 300-day deadline. It's interesting that that email comes in at day 298 when we're at day 300. But we also know that at that next time on January 30th, there's a correction made. Do we know if that earlier charge was on the same fax? No. No, we don't. We don't know one way or the other. We don't know. But bottom line is we know that she knew the mechanism of the EEOC. And clearly, we knew as of January 30th that she was aware of the mechanism of the EEOC and didn't do it. Now, going back to the equitable tolling pieces of it is one of the things that I can appreciate the courts looking at that December communication as concerning. But I think when you look at it and compare it to the other cases that were actually cited by my opponent in their brief, and as argued here today, specifically the early case, the difference is after she got that January 31 communication, what did she do? Nothing for four and a half months. Those other cases show something different. There was some action taken. But it wasn't until the middle of June is the next time that we have something. Then we also have her going back and forth with the EEOC for some time from June until the middle of September when a charge was finally perfected. And she went back four times. Back and forth. She even said in her documents that she notarized two different documents and sent them back and forth. So there was still some going on back and forth. And we're talking here almost another 300 days. So we're talking a long time after the 300 days of toll. There has to be some responsibility by the appellant. And that's what Amaranth's position is. I want to thank you for your time. Please feel free to ask me any other questions. Thank you, Ms. Rhodes. Thank you. Mr. Lastuen, we'll move now back to you for rebuttal argument. Thank you. Thank you, Your Honors. We agree that the decision should be remanded back to the district court in order to figure out a complete record on equitable tolling and establish the record of all the e-mails sent between the agency and Ms. Ballard because, as it clearly stands, there are a number of key e-mails missing, both in terms of what they said and the timing. With regard to equitable tolling, I'd like to address a few points. First, at the time of Ms. Ballard's filing, under the IDHR's work-sharing agreement with the EEOC, the filing deadline was 300 days for federal claims, not 180 days, meaning there was plenty of time after Ms. Ballard filed her CIS remaining within the time period. Additionally, there are no disputes that the CIS was filed within the time period. With regards to the January 30th e-mail discussing the EEOC number, this is not necessarily an indicator that Ms. Ballard was aware that there was something more she needed to do. If anything, it was an indicator that she thought, as the December 21st e-mail indicated, her information had been filed with the EEOC and she merely wanted to check on her claim or something of that sort, which we are unable to determine right now due to the lack of the e-mail information within there. That she thought the EEOC had an official case number with her is indicative of her belief in the December 21st e-mail, which clearly specified that her information had been provided both to the IDHR and the EEOC. This was reinforced by the later e-mail that said that her charge had been filed on August 23rd when she filed her CIS, all of which supported the suggestion that the CIS was sufficient for the purposes of the charge filing deadline. Additionally, the January 30th e-mail did not give her notice that there was anything else she had left to do, as it did not indicate from the agency that she had not filed the perfected charge, nor that there was anything remaining required of her. Instead, all it indicated was that the agency was working on deciding on her charge and whether or not it should be drafted, none of which requires anything additional from the filer or anything on the part of Ms. Ballard. In fact, the IDHR never affirmatively, as far as we're aware on the record, informed Ms. Ballard that she had not filed the perfected charge within the time period. Even when they were discussing filing her perfected charge the next summer, the agency never once noted their mistake or discussed it with her. The reason that Ms. Ballard went back and forth with the IDHR several times once they had gotten around to filing a perfected charge was not due to any lack of diligence on her part, but simply because the first couple drafted charges provided to her contained information that she did not agree with or that was inconsistent with her CIS, thus leading to a back and forth with the agency in order to appropriately establish the facts of her claim of discrimination. For those reasons, we request that the Court vacate the decision below and remand. Thank you. Thank you very much, Mr. Lastiew and thank you very much, Mr. Schmidt. Thank you, Ms. Rhodes and Ms. Jenner. The case will be taken under revision.